United States District Court
Southern District of Texas
**ENTERED**
January 08, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HIGHLAND VILLAGE LIMITED PARTNERSHIP, § § § | |
| Plaintiff, § § § | CIVIL CASE NO. H:22-1733 |
| v. § § | |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, § § § § | |
| Defendant. § § § | |

**MEMORANDUM AND ORDER**

Highland Village Limited Partnership sued Comcast Cable Communications Management, LLC for breach of contract after Comcast vacated and stopped paying rent on premises it had leased from Highland Village for a retail store. (Docket Entry No. 1). Comcast counterclaimed, alleging that Highland Village breached the contract first by failing to repair clogged sewer lines, making the premises "untenantable." (Docket Entry No. 48-1). Comcast alleged that because it could not use the premises for its permitted use, it had the right to terminate the Lease. (Docket Entry No. 35).

Comcast alleged that it "experienced constant sewer backups in its store" from the outset of the Lease. (Docket Entry No. 47 at 7). Comcast alleged that it hired plumbers who determined that the sewer backups in the store were caused by blockages in a sewer line on Highland Village property "located outside the boundaries of the Leased Premises[.]" (*Id.*). Comcast submitted documents showing that it notified Highland Village of the sewage issues as early as July 25, 2020. (Docket Entry No. 48-4). The issues persisted. On July 27, 2021, a Highland Village representative

informed Comcast that the issues were not Highland Village's responsibility to repair. (Docket Entry No. 48-5).

On August 3, 2021, Comcast responded that "[p]ursuant to Section 9.01(ii), Section 12.8, and Section 16.4 of the Lease," Highland Village was in breach and that if the sewer line was not completely repaired within five days, Comcast would have the right to terminate. (Docket Entry No. 48-6). On September 22 and 23, 2021, Comcast sent letters to Highland Village stating that Comcast would terminate the Lease and surrender the premises by October 31, 2021. (Docket Entry Nos. 48-7, 48-8). After Comcast vacated the premises and stopped paying rent, Highland Village sued.

Highland Village has moved for summary judgment on its breach of contract claims against Comcast, and Comcast has responded. (Docket Entry Nos. 45, 47, 51, 52). Based on the motion and responses and replies, the record, and the applicable law, the court denies Highland Village's motion for summary judgment. The reasons are set out below.

**I.     The Rule 56 Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**III.  Analysis**

In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*,

3

167 S.W.3d 443, 451 (Tex. App.—Houston [14th Dist.] 2005, no pet). A breach of contract claim "must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including an allegation of a contractual relationship between the parties, and the substance of the contract which supports the pleader's right to recover." *Bayway Servs., Inc. v. Ameri-Build Const., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet).

Highland Village has moved for summary judgment that Comcast was not entitled to terminate the Lease and breached when it did so. (Docket Entry Nos. 45, 49). The relevant Lease provisions state:

> **Section 5.02. Interruption of Utilities.** Landlord neither assumes any liability for damages to either person or property due to the bursting of water lines or the cessation or interruption of any utility services, nor shall Landlord be considered in default hereunder as a result of such a cessation or interruption of utility services. No such interruption or malfunction of any utility services shall constitute an actual or constructive eviction . . . or, except as provided herein, render Landlord liable for any damages or entitle Tenant to be relieved from any of its obligations hereunder or entitle Tenant to an abatement of Rent or other charges[.] . . . In the event of any such interruption of any such services, Landlord shall use reasonable diligence to restore such service in any circumstances in which such interruption is caused by Landlord's fault (to the extent within Landlord's control), but Tenant shall have no claim for rebate of Rent or damages on account of any interruption or cessation in service occasioned thereby or resulting therefrom. Notwithstanding the foregoing, if (i) utilities serving the Leased Premises are interrupted for a period in excess of five (5) consecutive days, subject to Force Majeure, after Tenant notifies Landlord of such cessation in writing (the "Interruption Notice"); (ii) such cessation arises as a result of Landlord's negligence or willful misconduct; (iii) such cessation is not caused by a fire or casualty; (iv) the restoration of such services is reasonably within the control of Landlord; (v) intentionally deleted; and (vi) as a result of such cessation, the Leased Premises or a material portion thereof is rendered untenantable (meaning that Tenant is unable to use the Leased Premises for the Permitted Use) and Tenant in fact ceases to use the Leased Premises (which Tenant shall have the right to do so), or such material portion thereof, then Tenant, as its sole and exclusive remedy, shall by entitled to receive an abatement of Minimum Rent payable hereunder during the period beginning on the sixth (6th) day of such cessation and ending on the day when the service in question has been restored. . . .
>
> **Section 9.01. Landlord's Repairs.** Upon the condition precedent that Tenant shall have given Landlord prior written notice of the item damaged, Landlord will repair the following damage to the Leased Premises but none other: . . . (ii) damage to any utility lines (sewer, water, gas or electrical) located outside the boundaries of the Leased Premises but not such

4

utility lines exclusively serving the Leased Premises, or anything installed by Tenant or Tenant's contractors, under Section 6.10 . . .

**Section 16.04. Tenant's Remedy.** In the event of any Event of Default by Landlord, Tenant's exclusive remedy shall be an action of damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rent due Landlord), but prior to such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have a reasonable period in which to commence and diligently pursue to cure any such default. . . . Notwithstanding anything to the contrary in this Lease, the occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Landlord: (i) Landlord's failure to do, observe, keep and perform any of the terms, covenants, conditions, agreements or provisions of this Lease required to be done, observed, kept or performed by Landlord, within a reasonable time after written notice by Tenant to Landlord of such failure . . . . In the event of a default by Landlord, Tenant, at its option, without further notice or demand, shall have the right to any one or more of the following remedies in addition to any other rights and remedies provided at law or in equity or elsewhere herein: (a) to pursue the remedy of specific performance; (b) to pursue injunctive relief; (c) to seek damages for loss arising from Landlord's failure to discharge its obligations under the Lease; and (d) to terminate the Lease. Nothing herein contained shall relieve Landlord from its obligations hereunder, be construed to waive any claim by Tenant for damages or other relief, or obligate Tenant to perform Landlord's obligations. . . .

**Section 26.08. Condition of the Leased Premises.** Tenant hereby waives and relinquishes any right to assert, as either a claim or a defense, that Landlord is bound to perform or is liable for the non-performance of any implied covenant or implied duty of Landlord not expressly set forth herein. Tenant agrees that Landlord shall incur no liability to Tenant by reason of any defect in the Leased premises, whether apparent or latent. Landlord and Tenant expressly acknowledge and agree . . . [that] Tenant's obligation to pay rent hereunder is not dependent upon the condition of the Leased Premises or the performance by Landlord of its obligations hereunder, and (iv) Tenant will continue to pay the rent provided for herein without abatement, set-off or deduction, unless otherwise specifically provided for herein, notwithstanding any breach by Landlord of its duties or obligations hereunder, whether express or implied.

(Docket Entry No. 45-1, 48-1).

Highland Village argues that it is entitled to summary judgment that Comcast breached the Lease because under Section 5.02, Comcast "agreed that an interruption in utilities (including sewage services) would not constitute a breach by landlord (meaning it also would not constitute a default) and would not entitle it to terminate the Lease." (Docket Entry No. 45 at 5). The Lease does not define an "interruption in utilities," although it does provide "sewer" as an example of a

5

utility. Highland Village argues that "[a] clogged toilet or sewer line, which is a utility malfunction, falls squarely under [Section 5.02]." (Docket Entry No. 51 at 3). In response, Comcast argues that Highland Village cannot rely on Section 5.02 when "other specific sections of the Lease Agreement . . . directly address the issues involved in the lawsuit, such as HV's obligations to repair the sewer line in the common areas, and Comcast's right to terminate the Lease Agreement based on HV's failure to do so." (Docket Entry No. 47 at 11).

Section 5.02 appears to apply to interruptions—pauses or limited cessations—in a particular utility service. Section 5.02 provides an example of a burst pipe, stating that, "[n]o *such* interruption or malfunction of any utility services shall constitute an actual or constructive eviction[.]" (emphasis added). The kind of interruption contemplated in Section 5.02 appears to be a malfunction (such as a break in a pipe from a freeze) that promptly causes a pause or stop in the relevant utility service, such as running water. By contrast, Section 9.01 specifically obligates Highland Village to repair a utility line that is outside the Leased Premises but services that premises as well as others, even if there is no interruption in service. Section 16.04 allows termination of the Lease if the Landlord fails to fulfill its obligations, which include compliance with the repair obligations of Section 9.01.

Highland Village asserts that Section 5.02 applies to all malfunctions in utility service. But Section 5.02 repeatedly states that it applies to "the cessation or interruption of any utility services[.]" Section 5.02 uses the phrase "no such . . . malfunction" once to refer to the potential causes of a utility service cessation or interruption. The Lease terms do not support interpreting Section 5.02 to cover any malfunction that would make any utility service affecting the Comcast store to operate improperly. That interpretation would make Section 9.01, concerning damage to utility lines outside the Leased Premises but on property owned by Highland Village, redundant.

6

*Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) ("A basic principle of contract interpretation . . . is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."). Even if Section 5.02 was a general provision that applied to all utility malfunctions affecting the Comcast store on premises leased from Highland Village, Section 9.01 would create an additional obligation on Highland Village to repair damaged utility lines outside the premises but on property owned by Highland Village. *See In re Pirani*, 824 F.3d 483, 494 (5th Cir. 2016) ("specific provisions control over general provisions"). Failure to perform this obligation beyond Section 5.02 would trigger Comcast's remedy under Section 16.04.

Comcast alleges that the damage to the sewer line led to toilet backups and sewage overflows in its store, causing "issues with odor," "the constant cleanup of sewer water," and a "health and safety situation[.]" (Docket Entry No. 47 at 7). Comcast has not alleged that it suffered an interruption or cessation in sewer services, but rather that damage to the sewer line outside the Leased Premises but on Highland Village property caused plumbing issues and odors within the Premises. Highland Village disputes Comcast's allegations, but it does not characterize the sewer problems as a pause or stop in sewer services. The record provides sufficient evidence to raise factual disputes material to determining whether Section 5.02 applies to the sewer problems Comcast encountered, or whether Section 9.01 controls and allowed Comcast to terminate the Lease and vacate the premises. If Section 5.02 does not control, and Comcast's allegations regarding the damage to the utility lines and the reasonableness of Highland Village's response to the sewer problems are found credible, then Comcast's termination of the Lease was permitted under Sections 9.01 and 16.4 of the Lease. These material factual disputes require resolution by the finder of fact at trial.

The court denies Highland Village's motion for summary judgment.

SIGNED on January 8, 2024, at Houston, Texas.

                                            Lee H. Rosenthal
                                   United States District Judge